IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 21, 2005

## STATE OF TENNESSEE v. LAJUN M. COLE, SR.

**Appeal from the Circuit Court for Montgomery County
No. 40400207     Michael R. Jones, Judge**

---

**No. M2004-02812-CCA-R3-CD - Filed September 28, 2005**

---

This is an appeal from convictions on a jury verdict of criminal trespass of a habitation, especially aggravated kidnapping, misdemeanor reckless endangerment, and theft of property over $1,000. The Defendant was sentenced to eleven months and twenty-nine days for his misdemeanor trespass and reckless endangerment convictions, two years for his theft conviction, and twenty years as a violent offender for his especially aggravated kidnapping conviction. All of the sentences were to be served concurrently for an effective twenty year term of incarceration in the Department of Correction. On appeal, the Defendant challenges only his conviction for especially aggravated kidnapping, asserting there is insufficient evidence to support a conviction for this offense. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and J.C. MCLIN, JJ., joined.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, Lajun M. Cole, Sr.

Paul G. Summers, Attorney General & Reporter; Jennifer L. Bledsoe, Assistant Attorney General; John Carney, District Attorney General; and Dan Brollier, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The convictions in this case result from an incident in which the Defendant, Lajun Cole, put a knife to his estranged wife's throat (the victim) and held her captive in her own home in Clarksville for several hours during the morning of September 6, 2003. Shortly thereafter the Defendant forced his wife to leave their two young children unattended while she drove him to a nearby business

establishment. When the Defendant exited the vehicle, the victim drove off without him. The Defendant then stole a car and drove back to the victim's home, where he retrieved his own vehicle and fled.

A Montgomery County grand jury returned an eight count indictment against the Defendant charging him with the following: 1) aggravated burglary; 2) especially aggravated kidnapping; 3) aggravated kidnapping; 4) aggravated assault—use of a weapon; 5) aggravated assault—assault while under a restraining order; 6) reckless endangerment—four-year-old child; 7) reckless endangerment—two-year-old child; and 8) carjacking. The Defendant was tried by a jury.

Testimony at trial revealed that the Defendant and the victim were married and had two children together, but had been separated since February of 2003 and were in the process of becoming divorced. The victim had moved from Alabama to Arkansas, then to Texas, and finally to Clarksville, Tennessee, all in an effort to distance herself from the Defendant. When the Defendant showed up in Clarksville, the victim obtained an order of protection against him, which was effective at the time the offenses in this case were committed.

The Defendant took up residence in Nashville, where he roomed in a house with Mr. Gamarr Jordan. A visitation agreement was established whereby the Defendant would pick up his two children at the victim's place of work in Nashville at 3:00 in the afternoon, and then drop them back off at the same location when the victim got off work at midnight. This arrangement worked successfully several times.

On the afternoon of September 5, 2003, the Defendant picked up his two children, but did not return them to the victim's place of work later that night as planned. The victim placed several calls to the Defendant's cell phone, each time leaving messages. After about an hour, the victim left a message that she was returning to her home in Clarksville, and that the Defendant should bring the children to her. The Defendant called her back, and an arrangement was made by which the Defendant would drop the children off at the victim's front door and leave.

Approximately thirty minutes after this conversation, at around 2:00 a.m. on September 6, the victim heard a knock at her door. She looked out the peephole and saw her two children, but not the Defendant. She opened the door, and as she did the Defendant rushed in and closed the door behind him. The victim tried to prevent him from entering, but was unable to do so. The victim began to yell, demanding that the Defendant leave. The Defendant told the children to go to bed, and as soon as they closed the bedroom door he threw the victim onto the couch and put a dish rag over her mouth. He then pulled a knife from his jacket pocket and put it to her throat.

The Defendant told the victim that he no longer wanted to live, and that he wanted to "settle this tonight," and was "going to finish this tonight." The victim took these statements as serious threats and feared for her life. The Defendant continued to pin the victim down and held the knife to her throat for fifteen to twenty minutes. The victim stated that she eventually realized that continuing to scream would only "make things worse," so she stopped yelling and began to "tell him

everything [she] knew he wanted to hear." The victim was then allowed to sit up and the two talked on the couch until 5:00 that morning. Realizing that she had to find a way to get the Defendant out of her apartment and away from her children, she concocted the story that there was no food in her apartment for the children's breakfast, and they would need to go purchase some. The Defendant agreed that the two would leave together, but refused to allow the victim to take the children with them.

The victim drove herself and the Defendant to a nearby gas station, but because there was a police car in the lot the Defendant forced her to drive to a different station. As the victim was about to enter this second gas station, the Defendant "reminded" her of the kids back at her apartment, which she interpreted as a threat that she should not report him to the authorities. The victim then drove to a nearby laundry mat, and asked the Defendant to check the door to see if it was open. When the Defendant stepped out of the car, the victim drove off and placed a call to 911 using her cell phone. This call was recorded and played for the jury at trail. In this call, the victim explained the events of the night and requested that the police come to her apartment. Several minutes later, while she was sitting in her car near her apartment and still on the phone with the emergency operator, she observed the Defendant drive up in a car, exit, and get into his own vehicle. The victim drove off in her car, and the Defendant briefly followed the victim. He eventually turned and started driving down a road that led to Nashville.

The testimony at trial also revealed that after the victim left the Defendant in the laundry mat parking lot and drove off, the Defendant crossed the street to a gas station and stole a vehicle. Ms. Julie Green testified that she was standing between her car and its open driver's side door when the Defendant jumped in and drove off. The gas station attendant, who witnessed this event, called 911 to report the incident. Ms. Green's car was later discovered in the parking lot by the victim's apartment.

Officer Bobby Dickson of the Clarksville Police Department testified that he responded to the 911 call the morning of September 6, 2003, and found the victim in a parking lot near her apartment. He returned with the victim to her apartment where he recovered and logged into evidence a dish rag and a steak knife. Officer Mark Wojnarek, of the Montgomery County Sheriff's Department, testified that he was familiar with the Defendant before this incident because he had served the restraining order on the Defendant. He later recovered the Defendant's vehicle in Nashville and impounded it. The inventory search of this vehicle resulted in the discovery of a copy of the restraining order against the Defendant, a copy of his divorce papers, a map of Clarksville, and a greeting card addressed to the victim that said "forgive me" and was signed by the Defendant.

Officer Wojnarek also instructed other officers with the sheriff's office to contact the Defendant's roommate, Mr. Jordan. Mr. Jordan confirmed that the knife recovered in the victim's apartment belonged to him, and was part of a set he owned and kept in the house where the Defendant resided. Officer Wojnarek also stated that after a high profile search that included media exposure, the Defendant turned himself in and was arrested on September 10, 2003.

The Defendant elected not to testify at trial. The jury returned guilty verdicts on the following offenses: 1) trespass of a habitation; 2) especially aggravated kidnapping; 3) aggravated kidnapping; 4) aggravated assault; 5) aggravated assault; 6) reckless endangerment; 7) reckless endangerment; and 8) theft of property over $1,000.

At a sentencing hearing conducted in August of 2004, the trial court merged the aggravated kidnapping and two aggravated assaults into the especially aggravated kidnapping conviction, and also merged the two reckless endangerment convictions. The court then sentenced the Defendant to concurrent terms of eleven months and twenty-nine days for the two misdemeanor convictions of trespass and reckless endangerment; two years for the class D felony theft conviction; and twenty years for the Class A felony especially aggravated kidnapping conviction.[1] The Defendant filed a motion for a new trial in August of 2004, raising only a sufficiency argument. The trial court issued an order in November of 2004 denying a new trial, and the Defendant timely filed a notice of appeal.

**ANALYSIS**

The Defendant contends that the evidence was insufficient to convict him of especially aggravated kidnapping. He admits that he possessed a knife, but asserts that he did not "use[] it to hurt anybody." Therefore, he argues, his conviction of especially aggravated kidnapping should be "reduced to Aggravated Kidnapping" with an "eight (8) year, Range I sentence." We disagree.

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. See Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the

---

[1]Especially aggravated kidnapping requires service of 100% of the imposed sentence. See Tenn. Code Ann. § 40-35-501(i)(1), (2)(C).

weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. See Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

In order to convict the Defendant of especially aggravated kidnapping, as applicable in this case, the State was required to prove beyond a reasonable doubt that the Defendant knowingly removed or confined  the victim unlawfully so as to substantially interfere with her liberty, and this was "[a]ccomplished with a deadly weapon." Tenn. Code Ann. § 39-13-305(a)(1). See also id. § 39-13-302.  By contrast, the lesser crime of aggravated kidnapping is the unlawful restraint of a victim "[w]hile the defendant is in possession of a deadly weapon or threatens the use of a deadly weapon." Id. § 39-13-304(a)(5). The Tennessee Sentencing Commission distinguished the requisite deadly weapon elements of the two different crimes as follows:

> For example, during the kidnapping, if the defendant had a deadly weapon in his or her pocket but did not mention or use it, or if he or she did not have a deadly weapon in his or her possession, but threatened the victim with the use of a deadly weapon, the offense would be punishable as an aggravated kidnapping under [Tenn. Code Ann. § 39-13-304].  If the defendant actually used a deadly weapon or used something other than a deadly weapon but convinced the victim that it was a deadly weapon, the offense would be punishable as an especially aggravated kidnapping under § 39-13-305(a)(1).

Tenn. Code Ann. § 39-13-304, Sentencing Commission Comments (emphasis added).

In this case, the evidence submitted at trial was sufficient for a rational trier of fact to conclude that the victim was confined unlawfully so as to interfere substantially with her liberty, and this was "accomplished with a deadly weapon." The victim testified that the Defendant threw her to the couch, pinned her down, and held a knife to her throat for fifteen to twenty minutes. It is well settled law in Tennessee that "the testimony of a victim, by itself, is sufficient to support a conviction." State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993). As already stated, a jury's guilty verdict accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. See Bland, 958 S.W.2d at 659. Moreover, questions about the credibility of a witness and the weight and value of the evidence presented at trial are issues that are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate this evidence. See Evans, 108 S.W.3d at 236.  In this case, the jury obviously accredited the testimony of the victim as to the events of the crime. Accordingly, the proof supports a finding that the offense was accomplished with a deadly weapon.

The Defendant admits that he had a knife with him, but maintains that he did not use it to "hurt anybody." The especially aggravated kidnapping statute does not require that a victim be "hurt" with a deadly weapon, only that the kidnapping be "[a]ccomplished with a deadly weapon."

Tenn. Code Ann. §39-13-305(a)(1). Thus, the Defendant's argument that the State failed to provide sufficient evidence to convict him of especially aggravated kidnapping because he did not hurt anyone with a deadly weapon is misplaced. This issue is without merit.

The Defendant also states in his appellate brief that the elements of especially aggravated kidnapping and aggravated kidnapping "are the same under the facts at hand," and therefore to convict him of the more serious crime with a longer presumptive sentence "is an Equal Protection problem." First, as already addressed above, the elements for especially aggravated kidnapping and aggravated kidnapping are not the same. Second, we fail to follow the Defendant's apparent suggestion that his conviction violates his right to equal protection of the laws. Nonetheless, we need not address this "argument" on the merits as we deem it to have been waived.

The record reveals that the issue of an "Equal Protection problem" was never raised at trial. This Court need not grant relief to a party who fails "to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." See Tenn. R. App. P. 36(a). Furthermore, it is well settled law that failure to raise an issue of error, other than sentencing or sufficiency of evidence, in a motion for a new trial waives that issue for purposes of appellate review. See Tenn. R. App. P. 3(e). Additionally, even if the equal protection issue had been preserved for appellate review, because the Defendant failed to cite to any relevant legal authority in support of his argument as required by our rules, the issue is also procedurally waived on this ground. See Tenn. Ct. Crim. App. R. 10(b); Tenn. R. App. P. 27(a)(7).

CONCLUSION

Based on the foregoing reasoning and authorities, the judgments of the trial court are affirmed.

_____
DAVID H. WELLES, JUDGE